## Western & Southern Life Insurance Co. v. Devers' Administrator.

(Decided Feb. 1, 1935.)

594

WILLIAM MARSHALL BULLITT, D. L. STREET and BRUCE
& BULLITT for appellant.

BENJAMIN MAZIN for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The Western & Southern Life Insurance Company
insured the life of Herbert Devers by issuing him in
August, 1931, an industrial policy in the amount of
$500, requiring payment of weekly premiums of 39
cents, and payable to his estate upon the event of his
death while the policy was in force and effect.

The insured Devers died on December 25, 1932,
when, after giving due notice to the company thereof
and the company's denial made of liability upon the
policy, this action was brought by Devers' administra-
tor, seeking recovery of its full amount.

The petition alleged that the policy in question
had been issued to Herbert Devers, as stated, that the
required premiums had been kept paid up to the time
of his death, and that the policy was then in full force
and effect.

The insurance company answered, denying liability
on the policy and traversing the allegations of the peti-
tion, and further affirmatively pleaded that the policy
had lapsed on October 3, 1932, for nonpayment of
premiums during the given four weeks' grace period
following next after August 29, 1932, up to which date,
it admitted, it was paid up, and that for such reason
the policy had lapsed and became void on October 3
and so remained, without revivor, at the time of the
insured's death on December 25, 1932.

In support of such affirmative defense, the company
pleaded and set out the following clauses of the policy,
providing the conditions upon which it would lapse and
become void:

"Grace Period. Should the insured die while
no premium on this Policy is in arrears exceeding

four weeks, the Company will recognize liability under this Policy subject to its provisions; but ·after the expiration of the said period, liability under this Policy shall cease except as otherwise provided.

"When Void. This Policy shall not be assigned and shall be void if any premium hereon shall not be paid when due according to the terms of this Policy, and if for any cause this Policy shall become void all premiums paid thereon shall be forfeited to the Company except as hereinafter provided."

The policy further contained the following clause, providing for its reinstatement after lapsing:

"Reinstatement: If this policy lapses for non-payment of premiums, it may be reinstated within one year from date of lapse, upon payment of all arrears, provided evidence of the insurability of the Insured satisfactory to the Company be furnished, but such reinstatement shall not take effect unless applied for in writing and unless on the date of such reinstatement the Insured be alive and in sound health."

Plaintiff replied, denying this affirmative plea that the policy was not in effect at the time of insured's death because of failure to reinstate it after its admitted lapse, as provided for by the policy.

Upon trial of the issues thus joined the lapsing of the policy on October 3 for non-payment of weekly premiums was admitted, and also that no premiums were afterwards paid thereon until October 28, 1932; but plaintiff attempted, nonetheless, to show waiver by the company of formal reinstatement of the policy by reason of its acceptance and retention of premiums paid thereon for reviving it.

The evidence shows that the policy in question was issued and delivered to Mrs. Aubrey, a sister of the insured, who lived in Louisville, Ky., and within an area thereof referred to by the parties as the company's "Inverness debit" for identifying policies carried therein. Also it showed that the insured's policy was one of several taken out and maintained by her with the defendant company on several members of her

family, which were carried by the company as the "Devers-Aubrey" group.

All of these family policies having lapsed by October 3, 1932, for nonpayment of premiums for the preceding four weeks' grace period, the company's agent, Robert Holden, on October 13 called at Mrs. Aubrey's home in regard to reinstating some of them when he secured her application to revive three of them, upon which premiums arrears of $1.50 were then paid him by her and later, pursuant to the terms of the policies, written applications therefor were made and allowed by the company. It is admitted, however, that the policy of the insured Herbert Devers was not included among these then so revived, nor was any request or application then made or arrear premiums then paid to the agent for revivor of the insured's lapsed policy.

It is also admitted by Mrs. Aubrey (who, it appears, alone attended to keeping the policies in force, including this one of her brother's) that no premiums whatever were paid on the Herbert Devers policy or any of these policies by her between August 29 and October 13, 1932, when it is admitted she paid, as above mentioned, the $1.50 in premiums for reinstatement of certain other family policies. She also testifies, and it is admitted, that on October 28 and November 10 she paid premiums in the amounts of $2.16 and 78 cents, respectively, to the company at its city branch office, which she states she directed should be applied as premium payments upon her brother's or Herbert Devers' policy, here involved. However this may have been, as to such directed application of it, she was given "temporary and conditional receipts" for these two payments, reciting they were applied as upon the Herbert Devers-Aubrey family group policies, and that the premium payments so made were "conditionally accepted on statement that the premiums on the policies, for which this deposit is made, are not in arrears exceeding four weeks * * * (and) if premiums are more than four weeks in arrears, policies are lapsed * * * and the company will only be liable for the return of the amount of this deposit." A further payment of $1.56, or four weeks' premium, was made (it is admitted) by Mrs. Aubrey on the Herbert Devers policy at her home to the agent, Holden, which she testifies was made on November 22, 1932. She is corroborated

in this, as to the time, place, and amount of this payment, by her sister, Mrs. Packwood, who testifies that she was at such time visiting Mrs. Aubrey when the agent Holden called at her home to collect these premiums, and that she saw this $1.56 then and there paid him, but that nothing was said by the agent during his visit as to the Devers policy having lapsed.

On the other hand, the agent testifies that this $1.56 premium payment upon the Herbert Devers policy was made him upon his second visit to Mrs. Aubrey's home, made a week after his first visit on October 13, when she paid $1.50 for reinstatement of the three family policies as above mentioned; and that during this second visit, Mrs. Aubrey requested the reinstatement of her brother's lapsed policy and, for such purpose, made him a payment thereon of $1.56, arrear premiums, for which he gave her an undated "temporary receipt," reciting (in substance) that the company's liability should commence under the policy provided the insured was in sound health as of the date of application. He further testifies that having given her this receipt, she mentioned that her brother was then ill and had gone to the hospital, whereupon he requested her to return him the receipt just given her, for the reason that the company would not reinstate the policy on Devers, where applied for when the insured was then sick and in the hospital, but that she nonetheless then refused to surrender it. He further testifies that upon his reporting this matter the next day to his superintendent, Mr. Priestly, he directed him to return to Mrs. Aubrey her $1.56 so paid him, and that, after two unsuccessful attempts to do so, upon his third call, during the third week after this, he found her at home and both returned the money to her and by a cunning ruse also secured possession of the receipt, but that he was compelled by her husband, at the point of a gun, to return it to her.

Mrs. Aubrey denies both his return of her money, saying that "if he gave her the money, she didn't see it," or that her husband drew a gun on the agent when making him restore her receipt.

These are the only payments, supported by any cogent or substantial evidence, made the defendant for the claimed purpose of reviving the involved Devers policy after its admitted lapse on October 3, 1932.

Conceding arguendo that all three payments were unconditionally made by plaintiff and unconditionally accepted and retained by defendant, their aggregate amount, it appears, would yet not be sufficient to have revived and kept in force the policy from August 29, 1932, to November 21, or to within the grace period of defendant's death on December 25, amounting to some twelve weeks, in that the above-quoted express condition and provision of the policy requires, for its reinstatement when lapsed, that all the premium arrears must be paid. It would thus appear that the plaintiff was not, under such circumstances, showing failure to pay all the required arrears in premiums to within "grace period" of insured's death, entitled to recover upon the policy, even conceding the policy requirements as to its reinstatement by written application, etc., as set out supra, were by the company (as claimed) waived.

However, it is to be here noted that while this evidence was clearly insufficient to reasonably show payment of all the arrear premiums required for keeping the policy in force to within the grace period of the insured's death, its weakness was yet in good measure attributable to the handicap under which given by plaintiff's witness, an ignorant woman, unable to read and thus identify the many receipts given and saved by her for payments made upon these family policies she attempted to carry and her report of them was made under the handicap of much confusion of memory as to the particular times and dates the claimed payments were made upon these several policies, including that of her brother here involved. While her evidence contains seeming admissions that no premium payments were made by her on or between certain dates, we find that they were made or given with the reservations or qualifications that she was told by agent, or understood, that the policy was paid up, or that a portion of the premiums she paid would be applied thereon, or that she had previously made a premium payment, the receipt for which she was unable to find or identify, which much impaired their evidential value as admissions.

Despite these considerations we are yet led to conclude that, inasmuch as the verdict appears to be flagrantly against the evidence as given, we are upon

such ground constrained to reverse the judgment. However we are yet also persuaded, by reason of the foregoing considerations, that the cause should not be peremptorily dismissed, but remanded with directions for a new trial, in order that plaintiff may be afforded an opportunity to more clearly and satisfactorily present such evidence as he may have in its support tending to show the claimed payment of all the premium arrears required for reinstatement of the involved policy, or the company's waiver of its formal reinstatement by its unconditional acceptance and retention of them, and, also, if he so desires, to amend his pleadings, conforming allegations to proof. Also, it is our opinion that the cause should be remanded with the further direction that, should the evidence as to the amount of premiums so paid to revive the policy be again the same, the defendant's motion for a peremptory instruction should be sustained.

Such being our conclusion, we deem it unnecessary to extend this opinion by a discussion and determination of the other questions here presented, which are expressly reserved for our later consideration and decision should they be again herein presented.

Therefore, for the reasons stated, the judgment is reversed and cause remanded, with directions for a new trial consistent with this opinion.